UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

In re:                                                          Chapter 7

DAVID BIRNBAUM,                                                 Case No. 11-50359-ess
*a/k/a* DAVID GUGGENHEIM,
*a/k/a* DAVID B. GUGGENHEIM,
*a/k/a* DAVID BIRNBAUM GUGGENHEIM,

                                    Debtor.
---------------------------------------------------------------x

GUGGENHEIM CAPITAL, LLC *and*
GUGGENHEIM PARTNERS, LLC,                                       Adv. Pro. No. 12-1011-ess

                                    Plaintiffs,

         -against-

DAVID BIRNBAUM,

                                    Defendant.
---------------------------------------------------------------x

## MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT

Appearances:

Gregory Kopacz, Esq.                      Ronald D. Coleman, Esq.
McDermott Will & Emery LLP                Scott D. Simon, Esq.
340 Madison Avenue                        Goetz Fitzpatrick LLP
New York, NY 10173                        One Penn Plaza
  *Attorneys for Guggenheim Capital, LLC and*   Suite 4401
  *Guggenheim Partners, LLC*              New York, NY 10119
                                            *Attorneys for David Birnbaum*

HONORABLE ELIZABETH S. STONG
UNITED STATES BANKRUPTCY JUDGE

### Introduction

Before the Court is the motion of Guggenheim Capital, LLC and Guggenheim Partners,

LLC (together, "Guggenheim") seeking summary judgment that the debt owed to them by David

Birnbaum, the debtor in this Chapter 7 case, is nondischargeable pursuant to Bankruptcy Code

Section 523(a)(6), because it arises from a willful and malicious injury by Birnbaum to

Guggenheim or its property.

Guggenheim seeks summary judgment pursuant to Federal Rule of Civil Procedure 56,

made applicable here by Bankruptcy Rule 7056, on grounds that this Court should give

preclusive effect to a judgment and fee award in its favor entered by U.S. District Court for the

Southern District of New York (the "District Court") and affirmed by the U.S. Court of Appeals

for the Second Circuit in Guggenheim's trademark infringement action against Birnbaum and an

affiliated entity.  Guggenheim argues that based on the District Court's findings in that action,

Birnbaum should be collaterally estopped from re-litigating in this forum whether he acted

willfully, whether he acted maliciously, and whether his actions caused injury.

Courts should not move too quickly to conclude that collateral estoppel bars a defendant

from defending an action.  Times and circumstances change, and courts must balance many

considerations when collateral estoppel is invoked.  From a defendant's perspective, the

consequences of collateral estoppel may seem harsh.  But there are considerations on the other

side of the balance as well.  A plaintiff should not need to prove the same facts over and over

again in order to obtain meaningful relief.  As a result, the requirements of collateral estoppel

call for the moving party to demonstrate that the issue is substantially identical, that the issue

was actually litigated and determined, that the party to be estopped had a full and fair

opportunity to litigate the issue, and that the determination of the issue was necessary to the first court's final judgment. These are challenging requirements, and each must be satisfied for a defendant to be barred from re-litigating an issue. But where – as here – these requirements are met, then the plaintiff should not be required to litigate the issue again.

## Jurisdiction and Authority To Enter a Final Judgment

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). To the extent that Guggenheim's nondischargeability claim is finally adjudicated on this motion, this Court may enter an appropriate order and judgment. In the event that the District Court concludes that this Court may not enter a final order or judgment consistent with Article III of the United States Constitution on this claim, this Memorandum Decision and the accompanying Order may be treated as proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c).

## Background

### *The Bankruptcy Case*

On December 12, 2011, David Birnbaum filed a petition for relief under Chapter 7 of the Bankruptcy Code. Birnbaum's bankruptcy petition notes several aliases, including David Guggenheim, David B. Guggenheim, and David Birnbaum Guggenheim. In his Statement of Financial Affairs, Birnbaum indicated that in the year preceding his bankruptcy filing, he was a defendant in an action captioned *Guggenheim Capital, LLC v. Catarina Pietra Toumei*, Case No. 10-8830, pending in the U.S. District Court for the Southern District of New York (the "District Court Action").

### *The District Court Action*

On November 22, 2010, Guggenheim commenced the District Court Action against Birnbaum and others by filing a complaint alleging violations of the Lanham Act, including trademark infringement and trademark counterfeiting, the Racketeer Influenced and Corrupt Organizations Act, and New York law.

That same day, the District Court entered a temporary restraining order enjoining Birnbaum from using Guggenheim's marks, and directing him to respond to Guggenheim's expedited discovery requests and to preserve all records related to that matter. Some four weeks later, on December 17, 2010, the District Court converted the temporary restraining order into a preliminary injunction, enjoining Birnbaum from using Guggenheim's marks.

After those orders were entered, the District Court found that Birnbaum continued to counterfeit and infringe the Guggenheim marks as part of a scheme to defraud investors. Four months later, the District Court issued an order to show cause why contempt sanctions should not be imposed for Birnbaum's alleged failure to comply with that court's preliminary injunction order.

Birnbaum participated in the District Court Action in several ways. He appeared at the December 17, 2010 preliminary injunction hearing and the December 30, 2010 contempt hearing. Birnbaum also sought and received extensions of time to respond to Guggenheim's discovery requests, sought and was denied a stay of discovery pending the resolution of the related criminal investigation, and sought and was denied a modification of the District Court's preliminary injunction.

*The District Court Judgment*

On July 14, 2011, based on Birnbaum's continuing conduct within and outside the

District Court Action, including his violations of the preliminary injunction and discovery

orders, and his continuing counterfeiting and infringement of Guggenheim's trademarks, the

District Court sanctioned Birnbaum and entered a default judgment against him and Dabir

International, Ltd., an entity that he controlled (the "District Court Judgment" or "Judgment").

The District Court determined that Birnbaum intentionally injured Guggenheim by his

counterfeiting and infringement of Guggenheim's trademarks, and that his conduct was willful.

Judgment ¶¶ 51, 53-54.  Specifically, the District Court found:

> Plaintiffs' Guggenheim Marks are famous and federally registered.  Defendants
> are using "Guggenheim" marks that are identical or virtually indistinguishable
> from Plaintiffs' Guggenheim Marks for the same services identified in Plaintiffs'
> federal trademark registrations.  Defendants' conduct has caused actual confusion
> in the marketplace, including among sophisticated investors.  *Defendants' use of
> Plaintiffs' Guggenheim Marks is a bad faith attempt to trade off of the goodwill
> and reputation of Plaintiffs' famous marks.*  Defendants' conduct is likely to
> cause a likelihood of confusion and a likelihood of dilution with respect to
> Plaintiffs' "Guggenheim" marks in violation of the Lanham Act and New York
> law.
>
> *Defendants' conduct constitutes the intentional trafficking in counterfeit marks* in
> violation of the Lanham Act and New York law, including 15 U.S.C. § 1116(d)
> . . . .  Because *Defendants' conduct is willful, intentional, and in bad faith* . . . the
> Court finds that statutory damages in the amount of $250,000 per counterfeit
> mark are appropriate under the circumstances of this case.
>
> *Defendants' unlawful conduct has been knowing and intentional* and there are no
> "extenuating circumstances" for such conduct.  Plaintiffs are entitled to an award
> of their reasonable attorneys' fees and costs under the Lanham Act and New York
> law.

Judgment ¶¶ 51, 53-54 (emphasis added).

As the District Court Judgment indicates, the District Court made several findings

concerning Birnbaum's intent and state of mind.  The District Court found, among other things, that Birnbaum's conduct was "a bad faith attempt" to exploit the "goodwill and reputation" of the Guggenheim trademarks, that Birnbaum's actions amounted to "intentional trafficking in counterfeit marks," and that his actions were "willful, intentional, and in bad faith."  Judgment ¶¶ 51, 53.  The District Court also found that Birnbaum's use of the Guggenheim marks created a "likelihood of confusion" and that there were "no 'extenuating circumstances'" that warranted his conduct.  Judgment ¶¶ 51, 53-54.

The District Court's award of damages, fees, and costs also reflects its findings concerning Birnbaum's intent and state of mind.  The District Court awarded Guggenheim "statutory damages for trademark counterfeiting in the amount of $1.25 million in lieu of an award of actual damages and profits, pursuant to 15 U.S.C. § 1117(c)."  Judgment ¶ 4.  Concluding that Birnbaum's "unlawful conduct [was] knowing and intentional and there are no 'extenuating circumstances' for such conduct," the District Court also awarded Guggenheim attorneys' fees and costs "under the Lanham Act and New York law," and directed Guggenheim to file a declaration documenting their costs and attorneys' fees.  Judgment ¶ 54.  On January 31, 2012, the District Court entered an order (the "Fees Order") awarding Guggenheim attorneys' fees of $405,901.75 and costs of $42,967.92.  Fees Order 20.

*The Second Circuit Decision*

On August 12, 2011, Birnbaum appealed the District Court Judgment to the Second Circuit Court of Appeals, and argued, among other things, that the District Court abused its discretion when it entered the Judgment.  In affirming the decision of the District Court, the Second Circuit noted that Birnbaum not only failed to answer the complaint but also failed to

comply with the District Court's discovery orders, disrupted his own deposition, and violated a preliminary injunction precluding the use of the Guggenheim mark. *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 450 (2d Cir. 2013). The Second Circuit concluded that the District Court did not abuse its discretion in entering judgment on default pursuant to Federal Rule of Civil Procedure 37, based on that court's determination that Birnbaum willfully defaulted after being "sufficiently warned" about the risks of failing to comply with court orders, including orders directing him to respond to the complaint and discovery, and by continuing to use the Guggenheim name and trademarks in violation of the temporary restraining order and preliminary injunction. *Guggenheim*, 722 F.3d at 451-52.

In addition, the Second Circuit concluded that even if default judgment under Rule 37 was not warranted, "the entry of the default judgment under [Federal Rule of Civil Procedure] 55 was certainly supported by the record." *Guggenheim*, 722 F.3d at 454. The Second Circuit concluded that the District Court did not abuse its discretion in entering judgment pursuant to Rule 55, because Birnbaum's default was willful and he did not present a meritorious defense. *Guggenheim*, 722 F.3d at 455.

<u>This Adversary Proceeding and the Relief Sought</u>

Birnbaum commenced this Chapter 7 bankruptcy case on December 12, 2011, some five months after the District Court entered the Judgment, and some two months before the District Court entered the Fees Order. On January 12, 2012, Guggenheim commenced this adversary proceeding by filing a complaint, and on February 9, 2012, Guggenheim filed an amended complaint (the "Complaint"), seeking a determination that the debt arising from the District Court Judgment and Fees Order is nondischargeable under Bankruptcy Code Section 523(a)(2)

6

because it arises from false pretenses, a false representation, or actual fraud; under Section

523(a)(4) on grounds that it arises from Birnbaum's fraud or defalcation while acting in a

fiduciary capacity; and under Section 523(a)(6) on grounds that it arises from willful and

malicious injury to Guggenheim's property.

The Complaint describes the history of the District Court Action, and alleges that

Birnbaum infringed Guggenheim's trademarks and falsely used the name "Guggenheim" in

furtherance of his nationwide scheme to defraud investors by offering "bogus" financial

consultation and investment services.  Complaint ¶ 18.  The Complaint alleges that Birnbaum's

actions included conducting business meetings and discussions with potential investors and

"distributing advertising materials, emails, letters of intent, investment proposals, and purchase

agreements replete with unauthorized uses of Plaintiffs' marks."  Complaint ¶ 20.  The

Complaint also alleges that the District Court issued the temporary restraining order and the

preliminary injunction enjoining Birnbaum from using the Guggenheim names and trademarks,

and that Birnbaum continued to use those names and trademarks despite the entry of these and

other orders.  Complaint ¶ 22.

In addition, the Complaint describes Birnbaum's participation in the District Court

Action.  This participation includes appearing with counsel on December 17, 2010 at a

preliminary injunction hearing; appearing on December 30, 2010 at a contempt hearing

concerning his continued use of Guggenheim's marks in violation of the temporary restraining

order and the preliminary injunction; making a motion on January 26, 2011 to modify the

preliminary injunction for permission to use the "David Guggenheim" and "David B.

Guggenheim" names in connection with importing and distributing distilled spirits; and

appearing on April 4, 2011 at a hearing to show cause why a default judgment should not be entered against him based on his continuing use of the "Guggenheim" name in violation of the temporary restraining order and preliminary injunction.  Complaint ¶¶ 26, 28, 31.

On March 1, 2012, Birnbaum filed an answer (the "Answer") to the Complaint. Birnbaum acknowledges that the District Court made certain findings and determinations, and states that they were "based on plaintiffs' erroneous and unsubstantiated submissions which defendant could not rebut because of his reliance on his privilege against self-incrimination under the Fifth Amendment upon the advice of counsel."  Answer ¶ 33.  Birnbaum also states that the District Court's rulings are the subject of a pending appeal, and otherwise denies the allegations of the Complaint.  Answer ¶ 35.

Birnbaum asserts several "affirmative defenses" to Guggenheim's Section 523 claims. These include that Guggenheim is Birnbaum's mother's name, that he has used the name Guggenheim throughout his life, and that his actions in using his family name "at all times lacked malice or willfulness to cause injury."  Answer pp. 6-7.  Birnbaum also states, in substance, that the District Court Judgment and Fees Order are not entitled to preclusive effect here because he "did not substantially participate in the underlying litigation," due to "procedural irregularities and other issues," and that he was not represented by counsel in certain of the District Court Action proceedings.  Answer pp. 7-10.

In response to Guggenheim's Section 523(a)(6) claim, Birnbaum states that Guggenheim does not allege and cannot prove actual injury, and that Guggenheim does not allege and cannot prove malice, "as is required to allege a claim of willful or malicious injury" under Bankruptcy Code Section 523(a)(6).  Answer pp. 14-15.

*The Motion for Summary Judgment*

By this motion, Guggenheim seeks summary judgment solely on its Section 523(a)(6) claim, and only that claim is addressed here.  This claim states that "[t]he claims and findings embodied in the District Court Judgment and the Fees Order constitute claims against Defendant for willful and malicious injury by Defendant to Plaintiffs or to their property," and should be excepted from Birnbaum's discharge pursuant to Bankruptcy Code Section 523(a)(6).  Complaint ¶¶ 45-46.  Guggenheim argues that the District Court Judgment and Fees Order are entitled to preclusive effect under the doctrine of collateral estoppel, and that the District Court's findings establish each element of this claim.

Guggenheim also argues, among other things, that Birnbaum "substantially participated" in the District Court Action and had the opportunity to defend on the merits, although he did not always choose to do so.  Guggenheim asserts that this satisfies the "actually litigated" requirement for collateral estoppel to apply.  And Guggenheim argues that the same standard of proof by a preponderance of the evidence applies in the District Court Action and here.  That is, Guggenheim argues that this Court should give preclusive effect to the District Court's determination that there is no genuine dispute of material fact as to each element of its Section 523(a)(6) claim, and that it is entitled to a determination that the District Court Judgment and Fees Order debts are nondischargeable as a matter of law.

Birnbaum filed a response (the "Response") and argues, in substance, that this Court should not give preclusive effect to the District Court's determinations because he did not have an opportunity to litigate the underlying claims in that forum.  As a consequence, he argues that the matters were not "actually litigated" and collateral estoppel cannot apply.  Response 8.

9

Birnbaum denies "the claims of trademark counterfeiting which formed the basis of the judgment against him," and asserts that this is the "first time" he has had the opportunity to deny these claims.  Response 6(n).

Specifically, Birnbaum asserts, among other things, that the District Court Judgment and Fees Order were "entered based on a number of purported defaults by [Birnbaum] . . . which were the direct result of the Debtor's assertion of . . . his privilege against self-incrimination under the Fifth Amendment."  Response 5(i).  And Birnbaum states that the District Court mischaracterized his assertion of that privilege as a failure to oppose Guggenheim's motion for a default judgment.

On these grounds, among others, Birnbaum argues that there are "unresolved factual disputes that relate to . . . issue[s] which [are] material to the outcome of the litigation."  Response 10.  Birnbaum also argues that the burden of proof in this nondischargeability action is the more stringent clear and convincing standard, as opposed to the lower preponderance of evidence standard that applies in a civil trademark infringement proceeding.  For these and other reasons, Birnbaum argues that collateral estoppel does not apply, and that Guggenheim is not entitled to summary judgment on its Section 523(a)(6) claim.  Response 10.

On November 4, 2013, the Court held an initial conference on the Motion at which Guggenheim and Birnbaum, by counsel, appeared and were heard.  On March 11, 2014, the Court held a continued conference and hearing on the Motion, at which Guggenheim and Birnbaum, by counsel, appeared and were heard, and the Court reserved decision.

### Discussion

*The Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c), made applicable to this Adversary Proceeding by Bankruptcy Rule 7056, provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the burden of demonstrating the absence of a genuine dispute as to any material fact, and all of the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 249, 255; *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003). Accordingly, the moving party must first demonstrate that there is no genuine dispute of material fact as to each element of its claim. If it does not, then summary judgment will be denied. *See, e.g.*, *Smith v. Goord*, 2008 WL 902184, at *4 (N.D.N.Y. Mar. 31, 2008), *aff'd*, 375 F. App'x 73 (2d Cir. 2010) (citing *Anderson*, 477 U.S. at 250 n.4).

If the moving party meets this initial burden,"the burden then shifts to the nonmoving party to come forward with evidence sufficient to create a genuine dispute as to a material fact for trial." *Silverman v. United Talmudical Academy Torah Vyirah, Inc. (In re Allou Distribs., Inc.)*, 446 B.R. 32, 49 (Bankr. E.D.N.Y. 2011). The non-moving party must present "significant probative evidence" that a genuine dispute as to a material fact exists. *Anderson*, 477 U.S. at

255.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine dispute as to a material fact for trial and summary judgment is appropriate.  *Matsushita*, 475 U.S. at 587.  *See McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (citing *Matsushita*, 475 U.S. at 586).

*The Collateral Estoppel Doctrine*

Collateral estoppel "bars 'repetitious suits involving the same cause of action' once 'a court of competent jurisdiction has entered a final judgment on the merits.'"  *NML Capital, Ltd. v. Banco Central de la Republica Argentina,* 652 F.3d 172, 184 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 23 (2012) (citing *United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, 1730 (2011)).  A "judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action."  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.5 (1979) (citations omitted).  As the Restatement (Second) of Judgments states:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

*Restatement (Second) of Judgments* § 27 (1982).

The Supreme Court has confirmed that collateral estoppel may be invoked in Section 523 actions.  As the Court noted, "collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."  *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991).  The Supreme Court also determined that "the ordinary preponderance standard . . . govern[s] the applicability of all the discharge exceptions."  *Grogan*, 498 U.S. at 288.  As a consequence, the

12

Supreme Court observed, "a bankruptcy court could properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action. *See Restatement (Second) of Judgments* § 27 (1982)." *Grogan*, 498 U.S. at 284. *See Indo-Med Commodities v. Wisell (In re Wisell)*, 494 B.R. 23, 29 (Bankr. E.D.N.Y. 2011) (citing *Grogan*). And as the Second Circuit noted, "[b]ankruptcy proceedings may not be used to re-litigate issues already resolved in a court of competent jurisdiction." *Kelleran v. Andrijevic*, 825 F.2d 692, 695 (2d Cir. 1987), *cert. denied*, 484 U.S. 1007 (1988).

Courts recognize that the application of the collateral estoppel doctrine differs based on the forum in which first judgment was entered. As several courts have found, "[when] the issues sought to be precluded were decided by a *federal* court, as in the case at bar, the Bankruptcy Court must apply the theoretically uniform federal common law of collateral estoppel.*" FTC v. Wright (In re Wright)*, 187 B.R. 826, 832 (Bankr. D. Conn. 1995). *See Smith v. Entrepreneur Media, Inc. (In re Smith)*, 2009 Bankr. LEXIS 4582 (9th Cir. B.A.P. Dec. 17, 2009), *aff'd*, 465 F. App'x. 707 (9th Cir. 2012) (stating that "[t]he application of issue preclusion to a prior federal judgment is determined by federal law"); *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 324 n.12 (1971) (observing that "[t]his court has noted, 'It has been held in non-diversity cases since *Erie R. Co. v. Tompkins* [304 U.S. 64 (1938)], that the federal courts will apply their own rule of res judicata.'").

Where, as here, the claims arise under the federal Lanham Act, "federal law governs the collateral estoppel . . . effect of any judgment on them." *Rigoni Di Asiago S.P.A. v. Mucci (In re Mucci)*, 458 B.R. 802, 809 n.10 (Bankr. D. Conn. 2011). And "'collateral estoppel may be

appropriate where there is ample support in the record for concluding that the district court based its Lanham Act judgment on the defendant's willful and malicious conduct.'" *Mucci*, 458 B.R. at 810 (quoting *Louis Vuitton Malletier v. Ortiz (In re Ortiz)*, 2009 WL 2912497, at *4 (Bankr. D.P.R. June 4, 2009)).

Several requirements must be met in order for a prior federal judgment to have preclusive effect. As the Second Circuit has observed:

> Federal principles of collateral estoppel, which we apply to establish the preclusive effect of a prior federal judgment, require that "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."

*Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006), *quoting Purdy v. Zeldes*, 337 F.3d 253, 258 & n.5 (2d Cir. 2003) (internal quotation marks omitted).

When collateral estoppel is invoked by a plaintiff in the context of a summary judgment motion, the plaintiff bears the burden on all elements, except that the party opposing the application of collateral estoppel bears the burden of "showing that the prior action did not afford a full and fair opportunity to litigate." *Kulak v. City of New York*, 88 F.3d 63, 72 (2d Cir. 1996).

Substantial Identity of Issues  The first requirement, that the issues are substantially identical in the pending and prior proceedings, calls for the court to ascertain:

> whether the issues presented by this litigation are in substance the same as those resolved [in the prior litigation]; whether controlling facts or legal principals have [not] changed significantly since the [prior litigation]; and finally, whether special circumstances warrant exception to the normal rules of preclusion.

*Montana v. U.S.*, 440 U.S. 147, 155 (1979).

"Direct identity of issues" is not required for collateral estoppel to apply. *Yash Raj Films (USA) v. Ahmed (In re Ahmed)*, 359 B.R. 34, 40 (Bankr. E.D.N.Y. 2005) (citing *Montana,* 440 U.S. at 155). Courts in this Circuit have found that the issues presented in the two actions need not be absolutely identical, although "the legal standards governing their resolution [must not be] significantly different." *Cerny v. Rayburn*, 2013 WL 5295299, at *7 (E.D.N.Y. Aug. 20, 2013). Rather, "it is sufficient that 'the issues presented in [the earlier litigation] are *substantially the same* as those presented by [the later] action.'" *Id.* (emphasis added, citations omitted).

Actual Litigation and Determination of the Issue  The second requirement, that the issue was actually litigated and decided in the prior proceeding, is satisfied where the issue was "raised by the pleadings or otherwise placed in issue . . . ." *Evans v. Ottimo*, 469 F.3d 278, 282 (2d Cir. 2006). Courts recognize that where the defendant does not appear or participate in the proceedings in any way, and a default judgment is entered, that judgment may not merit preclusive effect. *See, e.g.*, *Ahmed*, 359 B.R. at 44. At the same time, a full trial on the merits is not a prerequisite for collateral estoppel to apply. Rather, preclusion is appropriate where "[t]he issue [was] raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." *Dolan v. Roth*, 325 F. Supp. 2d 122, 133 (N.D.N.Y. 2004), *rev'd in part on other grounds*, 170 F. App'x 743 (2d Cir. 2006).

An additional consideration may arise when the party against whom collateral estoppel is invoked asserted his or her Fifth Amendment privilege against self-incrimination in the prior proceeding. Courts, including bankruptcy courts, have consistently found that the assertion of this Constitutional privilege does not prevent the application of collateral estoppel. "Nearly all bankruptcy courts that have considered the issue conclude that 'even when a party invokes his

15

Fifth Amendment privilege in the prior suit, the 'actually litigated' requirement for purposes of collateral estoppel may nevertheless be satisfied." *Digital Sys. Engineering, Inc. v. Moreno (In re Moreno)*, 414 B.R. 485, 490 (Bankr. W.D. Wis. 2009) (quoting *FTC v. Abeyta (In re Abeyta)*, 387 B.R. 846, 853 (Bankr. D.N.M. 2008) (citing cases)).  As another court observed, where a defendant in a prior proceeding "chose to remain silent when the stakes were highest," the conclusion that he "[is] now bound by that decision in the present litigation is a fair and reasonable" one.  *Samirah v. Sabhnani*, 772 F. Supp. 2d 437, 443 (E.D.N.Y. 2011).

        <u>Full and Fair Opportunity To Litigate the Issue</u>  The third requirement, that the party against whom collateral estoppel is invoked had a full and fair opportunity to litigate the issue, calls for the court to determine whether that party "was fully able to raise the same factual or legal issues" in the prior litigation.  *LaFleur v. Whitman*, 300 F.3d 256, 274 (2d Cir. 2002).

        As distinct from the "actually litigated" element, the requirement that the party opposing collateral estoppel had a full and fair opportunity to litigate the issue requires the court to examine whether the party "was fully able to raise the same factual or legal issues . . . assert[ed in the prior proceeding]."  *Id.*  So, for example, the Second Circuit declined to apply principles of collateral estoppel where the defendant was deprived of a fair opportunity to litigate based on, among other considerations, the trial judge's statements that "clearly abrogated his 'responsibility to function as a neutral, impartial arbiter'" and demonstrated "fundamental misunderstanding of the basis" of the defendant's claim.  *Ali v. Mukasey*, 529 F.3d 478, 491 (2d Cir. 2008).  Similarly, the Seventh Circuit declined to apply collateral estoppel where an immigration judge used language of religious intolerance, stating that it "taints the proceedings, erodes the appearance of fairness and creates substantial uncertainty as to whether the record

below was fairly and reliably developed." *Floroiu v. Gonzales*, 481 F.3d 970, 974 (7th Cir. 2007).

<u>Necessity of the Issue To Support the Final Judgment</u>  The fourth and final requirement for collateral estoppel to apply, that the issue previously determined was necessary to support the final judgment, requires the court to consider the elements of the prior claim and whether a final judgment was entered.  This assures that matters that were ancillary to the first determination, and matters that were not finally determined, will not be invoked to bar the consideration of a disputed issue by the second court.  As one Court of Appeals noted, "'for purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.'"  *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 216 (3d Cir. 1997) (quoting *Restatement (Second) of Judgments)*.

*The Elements of a Section 523(a)(6) Claim*

In order to establish that a debt should not be discharged under Bankruptcy Code Section 523(a)(6), a plaintiff must show that the debt at issue resulted from a "willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  That is, a plaintiff must establish three elements to succeed on a Section 523(a)(6) claim – first, that the debtor acted willfully, second, that the debtor acted maliciously, and third, that the debtor's willful and malicious actions caused injury to the plaintiff or the plaintiff's property.

As to the first element, that the debtor acted willfully, the Bankruptcy Code does not set forth a definition of "willful."  The Supreme Court has observed that "'willful' in [Section]

17

523(a)(6) means 'deliberate or intentional.'" *Kawaauhau v. Geiger*, 523 U.S. 57, 61, n.3 (1998). *See Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996) (same).  The Supreme Court also noted that the kind of intent necessary in construing this section of the Bankruptcy Code is similar to that of intentional torts, which "generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'  Restatement (Second) of Torts § 8A, comment *a*, p. 15 (1964) (emphasis added)." *Kawaauhau*, 523 U.S. at 61-62.  *See Mucci*, 458 B.R. at 810 (quoting *Kawaauhau*, 523 U.S. at 61).  And the Supreme Court stated that "[a] wilful disregard . . . which necessarily causes injury and is done intentionally, may be said to be done wilfully and maliciously." *Tinker v. Colwell*, 193 U.S. 473, 487 (1904).

As to the second element, that the debtor acted maliciously, the Bankruptcy Code likewise does not set forth a definition of "malicious."  The Second Circuit has concluded that the term "malicious" in this context means "'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.'"  *Ball*, 451 F.3d at 69 (quoting *Navistar*, 94 F.3d at 87).  And "[t]he conduct complained of must be intended to or necessarily cause injury in order for the debt to be determined nondischargeable." *Ahmed,* 359 B.R. at 41.  In *Ahmed*, the court concluded that because the finding that the debtor deliberately disregarded warnings "was necessary to the District Court's judgment, the subsumed finding of malice may be given preclusive effect." *Ahmed*, 359 B.R. at 43.  In addition, as this Court previously noted, "[m]alice may also be implied from 'the acts and conduct of the debtor in the context of [the] surrounding circumstances.'" *Yaj Rash Films (USA) Inc. v. Akhtar (In re Akhtar)*, 368 B.R. 120, 130-31 (Bankr. E.D.N.Y. 2007).  This Court also noted that "a court may find malice 'when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in

18

the ordinary relationships among people, and injurious to another.'" *Akhtar*, 368 B.R. at 132 (citation omitted).

As to the third element, that the debtor's actions caused injury to the plaintiff or its property, "[t]he conduct complained of must be intended to or necessarily cause injury in order for the debt to be determined nondischargeable." *Ahmed,* 359 B.R. at 41. And in the context of Lanham Act violations, "it is impossible to separate the 'conduct' of trademark infringement from the 'injury' of trademark infringement." *Smith*, 2009 Bankr. LEXIS 4582, at *2.

Finally, the standard of proof necessary in a Section 523 nondischargeability action is by a preponderance of the evidence. As the Supreme Court stated, "we hold that the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." *Grogan*, 498 U.S. at 291.

*Whether Guggenheim Has Shown that There Is No Genuine Dispute of Material Fact that Birnbaum Acted Willfully*

The first element of a Section 523(a)(6) claim is whether the defendant acted willfully. To succeed on this claim, Guggenheim must establish that Birnbaum's conduct was willful. And to succeed on this motion for summary judgment, Guggenheim must establish that there is no genuine dispute of material fact as to Birnbaum's willful conduct. Guggenheim relies on the District Court Judgment and the principle of collateral estoppel to show that there is no genuine dispute of material fact as to this element of the claim.

In order to make that determination, this Court must examine the requirements of collateral estoppel as applied to the willfulness element of Guggenheim's claim. That is, this Court must determine whether it is substantially identical to issues determined by the District Court, whether the issue was actually litigated in that forum, whether Birnbaum had a full and

19

fair opportunity to litigate the issue there, and whether it was necessary to the District Court's final determination that resulted in the Judgment. If these criteria are met, then Birnbaum may be precluded from re-litigating the issue here.

Guggenheim argues that, as found by the District Court and affirmed by the Second Circuit, Birnbaum acted willfully when he held himself out to be a member of the Guggenheim enterprise and used the Guggenheim name and marks to recruit and defraud investors. Guggenheim cites the District Court's findings that "[Birnbaum's] conduct constitutes the intentional trafficking in counterfeit marks in violation of the Lanham Act and New York law." Judgment ¶ 53.

In addition, Guggenheim argues that, as found by the District Court and affirmed by the Second Circuit, Birnbaum's conduct was "willful, intentional, and in bad faith," resulting in the award of statutory damages, which are warranted only in "exceptional" cases including cases where a defendant's acts are found to have been willful and intentional. Judgment ¶ 53. More specifically, Guggenheim argues that the issues decided in the District Court Action are identical to those presented in its Section 523(a)(6) claim because findings of fact on a willful trademark infringer's intentional conduct are identical to findings on the infringer's intent to cause injury.

Birnbaum responds that Guggenheim is his mother's family name, that he has used the name Guggenheim throughout his life, and that his actions in using his family name "at all times lacked . . . willfulness to cause injury." Answer 7.

Birnbaum also responds that the standard of proof in the District Court Action "differs from that required in bankruptcy," and as a consequence, the issues decided in the District Court Action are not identical to the issues presented here. Response 9. Birnbaum argues that a

plaintiff in a civil trademark infringement action must establish its claims by the lower

preponderance of the evidence standard, whereas the evidentiary standard in a dischargeability

action is the higher "'clear and convincing' evidentiary standard."  Response 9-10.  Because

there is no identity of issues, Birnbaum asserts that this element cannot be satisfied, and

summary judgment must be denied.

Here, the record shows that the District Court made several findings as to Birnbaum's

intent and state of mind, including his willfulness.  The District Court concluded, among other

things:

> [B]ad faith may be presumed where, as here, a defendant uses counterfeit marks.

> [B]ad faith is also demonstrated by [Birnbaum's] decision to offer and sell services that are identical or nearly identical to those offered by [Guggenheim].

> [Birnbaum's] use of . . . Guggenheim Marks is a bad faith attempt to trade off of the goodwill and reputation of [Guggenheim's] famous marks.

> Unless [Birnbaum is] permanently enjoined, [Guggenheim] will continue to suffer irreparable injury and the public will be deceived on account o[f] [Birnbaum's] use of the Guggenheim name and marks.

> [Birnbaum's] conduct constitutes the intentional trafficking in counterfeit marks in violation of the Lanham Act and New York law, including 15 U.S.C. § 1116(d).

> . . . Because [Birnbaum's] conduct is willful, intentional, and in bad faith . . . the Court finds that statutory damages in the amount of $250,000 per counterfeit mark are appropriate under the circumstances of this case.

> [Birnbaum's] unlawful conduct has been knowing and intentional and there are not 'extenuating circumstances' for such conduct.  Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs under the Lanham Act and New York law.

Judgment ¶¶ 48, 50-54.

As to the first requirement of collateral estoppel, whether the issues are substantially

identical in this action and the prior proceeding, the record shows that the District Court Judgment contains a number of findings and conclusions that "explicitly reference the court's determination that [the defendant's] infringement was intentional or grant relief that is predicated on intentional infringement." *Smith*, 2009 Bankr. LEXIS 4582, at *9. And the Judgment memorializes the District Court's determinations as to Birnbaum's willfulness in the prior proceeding. As a consequence, these issues are substantially identical in this case and in the District Court Action, and this requirement is met.

As to the second requirement of collateral estoppel, whether the issue was actually litigated and determined in the prior proceeding, the record shows that the issue of Birnbaum's willfulness was "raised by the pleadings or otherwise placed in issue" in the District Court Action. *Dolan*, 325 F. Supp. 2d at 133 (citation omitted). The record also shows that it was the subject of extensive proceedings, including the December 17, 2010 preliminary injunction hearing and the December 30, 2010 contempt hearing, and was addressed in detail in the District Court Judgment. For these reasons, this issue was actually litigated and determined in the District Court Action, and this requirement is met.

As to the third requirement of collateral estoppel, whether there was a full and fair opportunity to litigate the issue, the record shows that, as noted above, Birnbaum's willfulness was the subject of extensive proceedings in the District Court, and Birnbaum had the opportunity to participate in these proceedings. For example, Birnbaum appeared at preliminary injunction and contempt hearings, sought and received extensions of time to respond to discovery requests, and sought and was denied a modification of the District Court's preliminary injunction. Birnbaum argues that because he asserted his Fifth Amendment privilege against self-

incrimination in the District Court Action, he did not have a full and fair opportunity to litigate there.  But case law in this Circuit holds that the choice to assert one's Fifth Amendment privilege in a prior litigation may bind that party in subsequent litigation, and does not serve as a bar to the application of collateral estoppel.  *See, e.g., Samirah,* 772 F. Supp. 2d at 444.  Accordingly, Birnbaum had a full and fair opportunity to litigate the issue of willfulness, and this requirement is also met.

And as to the fourth requirement of collateral estoppel, whether determination of the issue was necessary to the final judgment, the record shows that the District Court's findings as to Birnbaum's willfulness formed the basis for its conclusions in several significant respects.  These include with respect to the District Court's determinations that Birnbaum's conduct was in bad faith and that his conduct amounted to the intentional trafficking in counterfeit marks.  The District Court's findings with respect to Birnbaum's willfulness also form the basis for that court's award of statutory damages and attorneys' fees and costs.  As a result, determination of this issue was necessary to the District Court Judgment, and this requirement of collateral estoppel is met.

Based on the entire record, the Court finds that Guggenheim has established that each of the requirements of collateral estoppel has been met as to the District Court's determination that Birnbaum acted willfully.  For these same reasons, the Court finds that Guggenheim has established that there is no genuine dispute of material fact as to the first element of its Section 523(a)(6) claim, whether Birnbaum acted willfully.

*Whether Guggenheim Has Shown that There Is No Genuine Dispute of Material Fact that Birnbaum Acted Maliciously*

The second element of a Section 523(a)(6) claim is whether the defendant's conduct was

malicious.  To succeed on this claim, Guggenheim must establish that Birnbaum's conduct was

not only willful but also malicious.  And to succeed on this motion for summary judgment,

Guggenheim must establish that there is no genuine dispute of material fact as to Birnbaum's

malicious conduct.  Again, Guggenheim relies on the District Court Judgment and the principle

of collateral estoppel to show that there is no genuine dispute of material fact as to this element

of the claim.

This requires the Court to consider each of the requirements of collateral estoppel as they

apply to the maliciousness element of Guggenheim's claim.  That is, this Court must determine

whether it is substantially identical to issues determined by the District Court, whether the issue

was actually litigated in that forum, whether Birnbaum had a full and fair opportunity to litigate

the issue there, and whether it was necessary to the District Court Judgment.  If these

requirements are met, Birnbaum will not be able to re-litigate that issue here.

The Bankruptcy Code does not define the term "malicious."  Personal animus is not

required; as the Second Circuit has concluded, the term "malicious" in this context means

"'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-

will.'"  *Ball*, 451 F.3d at 69 (quoting *Navistar*, 94 F.3d at 87.)  As one court observed, "[m]alice

need not be *actual*, but 'may be constructive or implied . . . by the acts and conduct of the debtor

in the context of [the] surrounding circumstances.'"  *Wisell*, 494 B.R. at 41 (citations omitted).

Guggenheim argues that, as found by the District Court and affirmed by the Second

Circuit, Birnbaum maliciously caused Guggenheim's injuries when he repeatedly disregarded

the District Court's orders by continuing to use Guggenheim's marks.  Guggenheim also cites

the District Court's findings that "[Birnbaum's] unlawful conduct has been knowing and

intentional and there are no 'extenuating circumstances' for such conduct."  Judgment ¶ 54.

Birnbaum responds, as noted above, that Guggenheim is his mother's family name, that he has used the name Guggenheim throughout his life, and that his actions in using his family name "at all times lacked malice . . . to cause injury."  Answer 7.  And Birnbaum states that Guggenheim does not allege and cannot prove actual injury or malice, "as is required to allege a claim of willful or malicious injury" under Section 523(a)(6).  Answer 14-15.

Here, as described above, the record shows that the District Court made a series of findings as to Birnbaum's intent and state of mind.  These include the determination that Birnbaum acted in bad faith, that his conduct constitutes the intentional trafficking in counterfeit marks in violation of federal and New York law, and that Birnbaum's conduct was willful, intentional, knowing, and in bad faith.  These findings led the District Court to enter temporary, preliminary, and permanent injunctions against Birnbaum's use of the Guggenheim name and marks, and to award statutory damages as well as attorneys' fees and costs.  In particular, the District Court found:

> [Birnbaum's] conduct constitutes the intentional trafficking in counterfeit marks in violation of the Lanham Act and New York law, including 15 U.S.C. § 1116(d).
>
>  . . . Because [Birnbaum's] conduct is willful, intentional, and in bad faith . . . the Court finds that statutory damages in the amount of $250,000 per counterfeit mark are appropriate under the circumstances of this case.
>
> [Birnbaum's] unlawful conduct has been knowing and intentional and there are not 'extenuating circumstances' for such conduct.  Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs under the Lanham Act and New York law.

Judgment ¶¶ 51, 53-54.

As to the first requirement of collateral estoppel, whether the issues are substantially

identical in this action and the prior proceeding, courts have noted that for collateral estoppel to apply in this context, "the non-bankruptcy court need not have made a finding of malice *per se*. Rather, the bankruptcy court can infer from the prior factual findings whether a debtor's pre-bankruptcy conduct was 'malicious' sufficient to satisfy Section 523(a)(6)." *Wisell*, 494 B.R. at 42 (citation omitted). And as the court found in *Ahmed*, "[t]he facts supporting a finding that the debtor's conduct was malicious, specifically his 'deliberate disregard' of warnings [not to engage in certain specific conduct] were found in the context of determining the willfulness of his [trademark] infringement." *Ahmed*, 359 B.R. at 43. Here, the record shows that the District Court found that Birnbaum disregarded its orders and deliberately continued to use counterfeit Guggenheim marks, and concluded that Birnbaum intentionally and willfully used the Guggenheim marks. This equates with acting maliciously for purposes of Bankruptcy Code Section 523(a)(6). For these reasons, these issues are substantially identical in this case and in the District Court Action, and this requirement is met.

As to the second requirement of collateral estoppel, whether the issue was actually litigated and determined in the prior proceeding, the record shows that the issues of Birnbaum's intent and state of mind were presented in the pleadings before the District Court and among the matters decided by that court, including in the context of the District Court's findings that Birnbaum continued to use the Guggenheim marks in knowing violation of court orders. In particular, the District Court described Birnbaum's conduct as the "unauthorized use" of marks "identical and similar" to Guggenheim marks, and as willful "acts undertaken with intent." Judgment ¶¶ 31, 53. For these reasons, the issue of maliciousness was actually litigated and determined in the District Court Action, and this requirement is met.

26

As to the third requirement of collateral estoppel, whether there was a full and fair opportunity to litigate the issue, the record shows that, as with Birnbaum's willfulness, the issue of maliciousness was the subject of extensive proceedings in the District Court, in which Birnbaum either participated or had the opportunity to participate.  His participation included, among other things, appearing at the preliminary injunction and contempt hearings, seeking and receiving extensions of time to respond to discovery requests, and seeking but being denied a modification of the District Court's preliminary injunction.  And as noted above, Birnbaum's assertion of his Fifth Amendment privilege against self-incrimination in the District Court Action does not mean that he did not have a full and fair *opportunity* to litigate this issue, or that he may not be barred from re-litigating the issue by the collateral estoppel doctrine.  As a result, Birnbaum had a full and fair opportunity to litigate the issue of whether he acted maliciously in the District Court Action, and this requirement is also met.

As to the fourth requirement of collateral estoppel, whether determination of the issue was necessary to the final judgment, the record shows that as with the element of willfulness, the District Court's findings as to Birnbaum's malicious acts were necessary to several aspects of its rulings.  These include the determinations that Birnbaum "had a demonstrated history of willful non-compliance with court orders," and that he acted in bad faith and intentionally trafficked in counterfeit marks.  Judgment p. 9.  The District Court's determination that Birnbaum acted maliciously also forms the basis for its award of statutory damages and attorneys' fees and costs.  Accordingly, determination of this issue was necessary to the District Court's final judgment, and this requirement of collateral estoppel is met.

Based on the entire record, the Court finds that Guggenheim has established that each of

the requirements of collateral estoppel has been met as to the District Court's determination that Birnbaum acted maliciously. For these same reasons, the Court finds that Guggenheim has established that there is no genuine dispute of material fact as to the second element of its Section 523(a)(6) claim, whether Birnbaum acted maliciously.

*Whether Guggenheim Has Shown that There Is No Genuine Dispute of Material Fact that Birnbaum's Willful and Malicious Acts Injured Guggenheim or its Property*

The third element of a Section 523(a)(6) claim is whether the debtor's willful and malicious conduct caused an injury to the plaintiff or the plaintiff's property. To succeed on this claim, Guggenheim must establish that Birnbaum's willful and malicious acts injured Guggenheim or its property. And to succeed on this motion for summary judgment, Guggenheim must establish that there is no genuine dispute of material fact that Birnbaum's willful and malicious acts caused such an injury. Here too, Guggenheim relies on the District Court Judgment and the collateral estoppel doctrine to demonstrate that there is no genuine dispute of material fact as to this element of its claim.

This calls for the Court to examine the requirements of collateral estoppel as applied to the injury element of Guggenheim's claim. That is, this Court must determine that it is substantially identical to issues determined by the District Court, that the issue was actually litigated in that forum, that Birnbaum had a full and fair opportunity to litigate the issue there, and that it was necessary to the District Court's final determination that resulted in the Judgment. If the requirements of collateral estoppel are met, then Birnbaum will be precluded from re-litigating the issue here.

Guggenheim argues that, as found by the District Court and affirmed by the Second Circuit, Birnbaum injured Guggenheim by holding himself out to be a member of the

28

Guggenheim enterprise, and by successfully using the Guggenheim name and marks to recruit and defraud investors. Guggenheim also argues that the District Court's award of statutory damages, which are warranted only in "exceptional" cases including those where a defendant's acts were willful and intentional, demonstrates that it was injured by Birnbaum's willful and malicious conduct. Judgment ¶ 53. And Guggenheim argues that because findings of fact on a willful trademark infringer's intentional conduct are identical to findings on the infringer's intent to cause injury, it has shown that Birnbaum injured Guggenheim by infringing its trademarks.

Birnbaum responds that Guggenheim "never proved that [he] personally did them any harm or benefitted in any way from the use of [his] family name" and that "he never did [Guggenheim] any harm whatsoever by his conduct." Response ¶¶ 50, 52.

Here, the record shows that the District Court found that Birnbaum's continued use of Guggenheim's marks in violation of the court's preliminary injunction barring such use would result in "immediate and irreparable injury" to Guggenheim. As a consequence, that court entered the Judgment and Fees Order as an "appropriate" sanction. Judgment p. 10. The District Court also found, among other things, that Birnbaum's use of counterfeit Guggenheim marks caused investor confusion, and that "[u]nless [Birnbaum is] permanently enjoined, [Guggenheim] will continue to suffer irreparable injury . . . ." Judgment ¶ 53. For the same reasons, the District Court directed Birnbaum and his co-defendants to "pay . . . statutory damages for trademark counterfeiting," as well as costs and attorneys' fees. Judgment ¶ 4.

As to the first requirement of collateral estoppel, whether the issues are substantially identical in this action and the prior proceeding, the record shows that the District Court made several findings to the effect that Guggenheim was injured by Birnbaum's willful and malicious

use of its marks.  These include the determinations that Birnbaum attempted in bad faith to trade off of the goodwill and reputation of Guggenheim's marks, that Guggenheim suffered irreparable injury as a result of Birnbaum's use of these marks, and that unless Birnbaum was permanently enjoined from these acts, Guggenheim would continue to suffer such injury.  These findings are reflected in the District Court Judgment.  For these reasons, the issue of injury is substantially identical in this case and in the District Court Action, and this requirement is met.

As to the second requirement of collateral estoppel, whether the issue was actually litigated and determined in the prior proceeding, the record shows that the issue of whether Guggenheim was injured was "raised by the pleadings or otherwise placed in issue" in the District Court from the outset of the case, including at the preliminary injunction hearing and the contempt hearing, in which Birnbaum participated, as well as thereafter in the proceedings leading to the District Court Judgment.  As a result, the issue of whether Guggenheim was injured by Birnbaum's willful and malicious acts was actually litigated and determined in the District Court Action, and this requirement is met.

As to the third requirement of collateral estoppel, whether there was a full and fair opportunity to litigate the issue, the record shows that here too, the question of the extent and nature of Guggenheim's injury was presented to the District Court as early as the initial hearings on preliminary injunctive relief, and Birnbaum both participated and had the opportunity to participate in these proceedings.  Birnbaum's assertion of his Fifth Amendment privilege in the District Court Action does not take away from the fact that he had a full and fair opportunity to litigate the question of whether his actions injured Guggenheim or its property, and does not prevent the application of collateral estoppel.  As a result, Birnbaum had a full and fair

opportunity to litigate the issue of whether his actions injured Guggenheim or its property, and this requirement is met.

And finally, as to the fourth requirement of collateral estoppel, whether determination of the issue was necessary to the final judgment, the record shows that the District Court's findings as to injury to Guggenheim or its property were essential to – and explicitly referenced in – the Judgment, which concludes that "[u]nless [Birnbaum is] permanently enjoined, [Guggenheim] will continue to suffer irreparable injury." Judgment ¶ 52. The record also shows that the District Court entered the Judgment and Fees Order as a sanction against Birnbaum based on Guggenheim's injuries. For these reasons, determination of this issue was necessary to the District Court's final judgment, and this requirement of collateral estoppel is met.

Based on the entire record, the Court finds that Guggenheim has established that each of the requirements of collateral estoppel has been met as to the District Court's determination that Birnbaum's willful and malicious acts injured Guggenheim or its property. For these same reasons, the Court finds that Guggenheim has established that there is no genuine dispute of material fact as to the third element of its Section 523(a)(6) claim, whether Birnbaum's willful and malicious acts injured Guggenheim or its property.

## Conclusion

Based on the entire record, and for all the reasons reflected in the record and as set forth in this Memorandum Decision, Guggenheim Capital, LLC and Guggenheim Partners, LLC have established that they are entitled to summary judgment on their claim under Bankruptcy Code Section 523(a)(6) that the District Court Judgment and Fees Order debts are not dischargeable in this Chapter 7 bankruptcy case because they arise from a willful and malicious injury to

Guggenheim or its property.  An order in accordance with this Memorandum Decision will be entered simultaneously herewith.



**Dated: Brooklyn, New York**
**July 29, 2014**

32

_____
**Elizabeth S. Stong**
**United States Bankruptcy Judge**